# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8293 | **DATE** | 11/19/2003 |
| **CASE TITLE** | Santiago vs. Orland Park Motor Cars, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment (doc. #34) on Counts I and III is granted. With the elimination of all federal claims from the case, Ms. Santiago's state law claim in Count II is dismissed without prejudice pursuant to 28 U.S.C. sec. 1367(c)(3) and (d). This case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | NOV 2 0 2003 | 47 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| mm | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHELE SANTIAGO,                )
                                 )
        Plaintiff,                )
                                 )   Case No. 01 C 8293
vs.                              )
                                 )   Magistrate Judge Schenkier
ORLAND PARK MOTOR CARS, INC.,    )
a.k.a. MERCEDES BENZ,            )
                                 )
        Defendant.                )

**DOCKETED NOV 2 0 2003**

## MEMORANDUM OPINION AND ORDER

On October 29, 2001, the plaintiff, Michele Santiago, brought a three-count complaint against the defendant, Orland Park Motor Cars, Inc., alleging: (1) violations of Title VII based on alleged sexual harassment, retaliation and failure of the defendant to adequately address hostile and discriminatory behavior on the part of its employees (Counts I and III); and (2) a violation of Illinois common law based on alleged infliction of emotional distress (Count II). The defendant has moved for summary judgment on all counts (doc # 34). For the reasons set forth below, the Court grants the defendant's motion as to the federal claims in Counts I and III, and with no federal claims remaining in the case, dismisses the supplemental state law claim in Count II without prejudice.

I.

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or



is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted); *Flipside Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1032 (7th Cir. 1988), *cert. denied*, 488 U.S. 909 (1988).

In deciding a motion for summary judgment, the Court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. The Court must view all evidence in the light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Rendfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987), *cert. denied*, 484 U.S. 977 (1987), and draw all reasonable inferences in the nonmovant's favor. *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990). Credibility determinations, weighing evidence and drawing reasonable inferences are jury functions, not those of a judge when deciding a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 255.

"A court's obligation to draw all reasonable inferences in favor of a non-moving party, however, does not require that court to stretch existing evidence to reach conclusions or bolster arguments it could not otherwise support." *Frost Nat'l Bank v. Midwest Autohaus, Inc.*, No. 99-3872, 2001 WL 175342, *6 (7th Cir. Feb. 23, 2001). Mere conclusory assertions, unsupported by specific facts, are not sufficient to defeat a proper motion for summary judgment. *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 377 (7th Cir. 1998) (summary judgment affirmed; "conclusory statements that the testing conditions were less favorable" to plaintiff than to male co-workers was insufficient to "affirmatively demonstrate [ ] that a genuine issue of fact exists" on the issue of disparate treatment); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985)("conclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact").

## II.

We begin with an overview of the relevant background facts, which are without genuine dispute. We will address certain purported fact disputes in more detail below, as they relate to the specific theories of liability alleged in the complaint.

In 1999, Orland Park Motor hired Ms. Santiago to work as a cashier at its BMW dealership; shortly thereafter, she began working, she was transferred to the defendant's Mercedes Benz store (Def.'s 56.1 St. ¶¶ 9, 11). Ms. Santiago worked as a cashier at the Mercedes Benz store until July 2000 when, upon her request, she was transferred to a sales position (*Id.*, at ¶¶ 10-11). Ms. Santiago worked at the Mercedes Benz store for a total of sixteen months before she was terminated on February 17, 2001 (*Id.*, at ¶¶ 9, 40). Defendant offers as its non-pretextual reason for termination the low number of sales made by Ms. Santiago, her poor attendance, and an alleged incident of insubordination (*Id.*, at 40; Pl.'s 56.1 Resp. ¶ 59; Subka Dep. at 134).

Both parties agree that, in the three months immediately preceding her termination, Ms. Santiago had "performance problems": specifically, she was unable to "cover her draw" (that is, to meet her sales quota of cars) for the months of November 2000, December 2000, and January 2001 (Def.'s 56.1 St. ¶ 19; Pl.'s Dep. at 186-187, 233). While Ms. Santiago was credited with the sale of five vehicles in August 2000, seven vehicles in September 2000, and six vehicles in October 2000, she sold no cars in November 2000, and only one car each in December 2000 and January 2001 (*Id.*, at ¶ 22; *See* Def.'s sales charts and commission worksheets; Def.'s Ex. H; Pl.'s 56.1 Resp. ¶ 4). Ms. Santiago had been credited with the sale of 3.5 vehicles in February 2001 before being terminated in the middle of the month (Pl.'s 56.1 Add'l Facts ¶ 5). However, Ms. Santiago claims that she did not receive split credit for four sales in which she participated (*Id.*, at ¶¶ 27, 56; Pl.'s

3

Dep. 117 - 127). Ms. Santiago also claims that she was not given a fair share of credit for "bones sales" (also known as "house sales") – credit derived from sales made by manager referrals (*Id.*, at ¶ 28).

Ms. Santiago agrees that she missed work at least six times during the roughly six-month period she worked in sales, and was late at least two or three times (Def.'s 56.1 St.¶ 32). Ms. Santiago also admits that she either missed work or was late, without giving prior notice, two times during the month preceding her termination (*Id.*, at ¶¶ 33, 34).

Finally, on the day before she was fired, Ms. Santiago attended an auto show. The defendant maintains that she was there against the express instructions of her immediate supervisor. Ms. Santiago says that she did so with the permission of the defendant (Pl.'s 56.1 Resp.¶¶ 41-42). However, it cannot be reasonably or genuinely undisputed that the individual whom Ms. Santiago alleges gave her permission to attend the show (Steve Rogers) did not in fact work for the defendant (*Id.*, at ¶ 43; Def.'s 56.1 St.¶ 41; Pl.'s Dep. at 167-173). Mr. Rogers was a representative of Mercedes Corporate; Ms. Santiago cannot claim differently, because she testified to this fact in her deposition (Pl.'s Ex. B, at 171). Ms. Santiago was terminated in February 2001, the day following the auto show (Def.'s 56.1 St. ¶ 40; Pl.'s 56.1 Resp. ¶ 40).

On December 26, 2001 two months prior to her termination, Ms. Santiago had filed a sexual harassment complaint against a co-worker, Rick Tattoni (Def.'s 56.1 St.¶ 47, 51-56). Ms. Santiago testified she also filed a previous complaint against another co-worker, while she was working as a cashier (*Id.*, at ¶ 49). These were the only formal sexual harassment complaints she ever filed with her employer (*Id.*). It is undisputed that the defendant disciplined Mr. Tattoni after the complaint,

4

and that Ms. Santiago expressed satisfaction with Orland Park Motor's handling of the matter (*Id.*, ¶ 56; Def.'s Ex. N).

### III.

We now turn to an analysis of plaintiff's three claims in light of the summary judgment standards, the undisputed facts material to those claims, and defendant's arguments, beginning with the claim of a hostile work environment.

Ms. Santiago sets forth six contributing factors which she claims resulted in a "hostile work environment": (1) the incident with Rick Tattoni; (2) subsequently being asked by co-workers to leave the showroom floor while they discussed things they thought she would find offensive; (3) unequal bones sales credit; (4) failure to split sales with her; (5) refusal by co-workers to work with her; and (6) unprofessional comments made by co-workers (Pl.'s Mem. at 8-11). At the threshold, we note that Ms. Santiago never alleges, much less offers facts to show, any connection between her gender and alleged inequality in bones sales credits or the alleged failure of the management to credit split sales to her (Pl.'s 56.1 Add'l Facts ¶¶ 27, 28; Pl.'s Dep. at 119-126, 132-133). Thus, we conclude that those two assertions add nothing to Ms. Santiago's hostile work environment claim.

This leaves Ms. Santiago with, at most, a hostile environment claim based on actions by her co-workers. Under Title VII, an employer may be liable for discrimination if an employee is subject to a hostile work environment based upon her protected characteristic, in this case, the plaintiff's gender. To recover, the employee must show: (1) she was "subject to unwelcome harassment"; (2) the harassment was based on her gender; (3) "the harassment was severe and pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working environment;" and (4) the employer was "negligent either in discovering or remedying the harassment" propounded

5

upon the plaintiff by her co-workers. *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000); *see also Durkin v. City of Chicago*, 341 F.3d 606, 611 (7th Cir. 2003).

Both parties agree that Ms. Santiago is a member of a protected class, and that she claims harassment based on her membership in that class (Def.'s 56.1 St.¶ 1). However, the parties dispute whether the alleged harassment was so "severe and pervasive" as to create a hostile environment, and whether Orland Park Motor was negligent in discovering or remedying the alleged harassment. We address these two issues in turn.

### A.

A work environment is considered "hostile" for the purposes of Title VII if "a reasonable person would find it offensive *and* the plaintiff actually perceived it as such." *Hostetler v. Quality Dining*, 218 F.3d 798, 807 (7th Cir. 2000) (emphasis added). A plaintiff must demonstrate that the harassment or discrimination was serious enough to alter her work environment; she must show that the conduct made the workplace "hostile or abusive," as opposed to merely unpleasant. *Id.* at 808-09; *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993). In assessing the nature of the work environment, we consider a variety of factors, including: the frequency of the alleged harassing discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance. *Harris*, 510 U.S. at 23.

Ultimately, the determination of whether conduct is sufficient to create a hostile work environment turns on the specific circumstances of the case. But, in general, "simple teasing," offhand comments, isolated incidents (unless extremely serious), and infrequent or sporadic incidences are insufficient to demonstrate liability. *Haugerud v. Amery School Dist.*, 259 F.3d 678,

693 (7th Cir. 2001); *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996) (holding that three comments over a three-month period were insufficient to impose liability for hostile work environment because they did not unreasonably interfere with the plaintiff's work environment).

In the present case, Ms. Santiago does not point to any incident where she felt physically threatened (Def.'s 56.1 St.¶ 48). While she points to an incident of an offensive comment by Mr. Tattoni, Ms. Santiago offers no evidence that there were other incidents of offensive comments. Thus, the Tattoni episode stands as an isolated incident. Ms. Santiago states that there were several instances where she was "asked," but never ordered or required, to leave the sales floor for a matter of minutes because the male salesmen did not want to "offend" her (Pl.'s 56.1 Resp.¶¶ 25-26). Again, there is no evidence of physically threatening conduct. Ms. Santiago also alleges that her co-workers were uncooperative and unwilling to interact with her, and that one individual would not respond to her requests for help (*Id.*, at ¶ 29). However, Ms. Santiago never offers facts to show that these incidents materially altered her ability to perform her job.

The cases make clear that proof of a hostile work environment claim requires more than showing "mere annoyances." Ms. Santiago simply has not offered evidence that would show an environment that even nears the level of hostility sufficient to survive the defendant's summary judgment motion. By comparison to the cases in which the evidence was sufficient to show a hostile work environment – where plaintiffs were physically harassed or threatened, were subjected to extreme and pervasive offensive conduct and/or images, were saddled with excessive duties, or were physically prevented from doing their jobs – Ms. Santiago's claim of hostile workplace falls far short of creating a jury issue. *Harris*, 510 U.S. at 19; (1993); *Haugerud*, 259 F.3d 693-94; *Hostetler*, 218 F.3d at 807.

7

**B.**

Ms. Santiago's hostile workplace claim falls short on another score as well. Orland Park Motor can be held liable for any hostile work environment created by Ms. Santiago's co-workers only if the evidence would allow a jury to reasonably conclude that Orland Park Motor can show that the defendant acted negligently in failing to remedy the situation. To create a jury question on this issue, Ms. Santiago must point to evidence that would allow a jury to reasonably conclude that the defendant had adequate notice about the harassment, and failed to take reasonable steps to remedy the situation. The failure to report harassment "thwart[s] the basic purpose of requiring a charge, which is to give the employer 'some warning of the [complained-of] conduct' and afford 'the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion.'"

Where there is a policy in place for reporting sexual harassment, the plaintiff has a duty to use that policy to notify the company of the harassment. *Haugerud*, 259 F.3d at 696-97; *Ajayi v. Aramark Business Services*, 336 F.3d 520, 528 (7th Cir. 2003). Where others have complained on behalf of the plaintiff or if the plaintiff has taken alternative sufficient steps to notify the defendant of the alleged harassing behavior, then the defendant may be liable for failure to remedy the hostile environment, even if the plaintiff has not gone through the official reporting process. *But see McCombs v. Chrysler Corp. of Kokomo*, No. 99-0697, 2003 WL 1903352, *7 (S.D. Ind. Mar. 4, 2003) (where plaintiff knew defendant's reporting policy for sexual harassment, she had an obligation to use it; notification of the hostile work environment by other workers who complained was insufficient to establish defendant's liability). However, for liability to attach, the defendant must be made aware that the plaintiff is the victim of the hostile work environment. *Hill v. Am. Gen.*

*Fin.*, 218 F.3d 639, 643 (7ᵗʰ Cir. 2000) (finding notification insufficient until the plaintiff sent the defendant a letter in her own name complaining about the harassing behavior of her boss).

In this case, Ms. Santiago knew of the defendant's sexual harassment policy. Even if it was not published, she did not have a copy of the publication, or she thought that it was insufficient and inadequately applied, the relevant fact is that Ms. Santiago knew of a reporting mechanism. That much is beyond dispute, as she admittedly used the reporting mechanism to report alleged harassment twice prior to her termination (Pl.'s 56.1 Resp. ¶ 25). Furthermore, Ms. Santiago had clear access to her supervisor and had numerous opportunities to discuss her concerns about co-worker treatment with him (*Id.*, at ¶ 26). Ms. Santiago stated that she sought out her supervisor a number of times to complain about different job related problems (*Id.*). But, she never reported any complaints – recited here as a basis for a hostile work environment claim – concerning treatment by co-workers other than the one episode involving Mr. Tattoni. And, Ms. Santiago cannot claim that her experience involving the handling of the Tattoni episode led her to believe that complaining was futile, because management would not take prompt or effective action. To the contrary, Ms. Santiago admits that she was content with management's response to her complaint about Mr. Tattoni (*i.e.*, his three-day suspension) (Pl.'s 56.1 Resp. 56; Pl.'s Ex. B, at 72). In these circumstances, the evidence is insufficient to allow a jury to reasonably conclude that Orland Park Motor knew Ms. Santiago was being subjected to a hostile work environment and was negligent in remedying the situation.¹

---

¹Ms. Santiago argues that the defendant should have been put on notice that she was being subjected to a hostile workplace due to previous harassment suits and complaints filed by other women about Tattoni (Pl.'s Rule 56.1 Add'l Facts ¶ 32). This argument fails to create a triable issue as to whether the defendant had notice that *Ms. Santiago* was being subjected to a hostile workplace – particularly since Ms. Santiago expressed satisfaction with the management response to her complaint about Mr. Tattoni, and she made no complaints thereafter.

# IV.

We next turn to plaintiff's retaliation claim in Count III. Ms. Santiago alleges that Orland Park Motor retaliated against her for complaining about the improper conduct of her co-worker, Rick Tattoni, by discriminating against her in the period following the complaint and ultimately terminating her employment (Pl.'s Compl. ¶¶ 29-32). Following her sexual harassment complaint, Ms. Santiago states that she was periodically asked by male co-workers to leave the sales floor, to allow them to discuss topics which might offend her, and that she was not given accurate sales credits (Pl.'s Compl. ¶¶ 30-31). Then, in February 2001, after she had failed to make more than one sale in either December 2000 or January 2001, defendant terminated Ms. Santiago, citing job performance and attendance problems as well as insubordination for attending the Chicago Auto Show against the express prohibition to do so by her supervisor (Pl.'s Compl. ¶ 32; Def.'s 56.1 St. ¶¶ 22, 40; Pl.'s 56.1 Add'l Facts ¶¶ 43-44; Pl.'s Dep. at 231-233; Def.'s Ex. C. at ¶ 19). Although Ms. Santiago admits to having sales performance and attendance problems, she disputes the allegation that she attended the car show without permission and maintains that she was terminated in retaliation for her complaint rather than for the reasons proffered by defendant (Pl.'s 56.1 Resp. ¶¶ 17-19, 22 ¶¶ 41-43; Pl.'s Dep. at 162-168).

Title VII forbids an employer from retaliating against an employee for engaging in behavior protected by the statute, including complaining about discriminatory treatment in the workplace. *Durkin*, 341 F.3d at 614. To establish a *prima facie* claim of retaliation, the plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment reaction; and (3) there is a causal relationship between the two. *Ajayi*, 336 F.3d at 533. Should the plaintiff establish her *prima facie* case, the burden shifts to the defendant to articulate a legitimate non-discriminatory

10

reason for the employment action. If it can do so, the burden shifts back to the plaintiff to demonstrate that the defendant's reason is "pretextual." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 327 (7th Cir. 2002). Unless the plaintiff can demonstrate a question of material fact on whether the defendant's proffered reasons for firing her were pretextual, summary judgment is appropriate on her retaliation claim. We will first address whether there is sufficient evidence to create a trial issue or whether there is a *prima facie* case, and then move to the issue of pretext.

A.

The Seventh Circuit has stressed the importance of reviewing each element of the plaintiff's *prima facie* case before subjecting the employer to a pretext inquiry. *Peele*, 288 F.3d at 327 ("the *prima facie* case under *McDonnell Douglas* must be established and not merely incanted... If a plaintiff is unable to establish a *prima facie* case of employment discrimination under *McDonnell Douglas*, an employer may not be subjected to a pretext inquiry") (internal citations omitted). Although Ms. Santiago was terminated (and termination plainly is an adverse employment action), Ms. Santiago's proof falls short of the requirements for a *prima facie* case.

A claim for retaliation generally is preceded by an "obligatory complaint about discriminatory conduct, so that the employer is aware of the mistreatment and the corresponding protected activity." *Durkin*, 341 F.3d at 614 ("we have never held that an employer can retaliate when there has been no protected expression. An employer cannot retaliate if there is nothing for it to retaliate against"). In the present case, both parties agree that Ms. Santiago complained about sexual harassment in December 2000, using the formal channels established at the company (Def.'s 56.1 St. ¶ 25). However, her complaint dealt with a single instance of harassment by one co-worker (*Id.*, at ¶¶ 43 - 48; Pl.'s Dep. at 154-156). And, in response to the complaint, the company dealt promptly with her

concerns. *Id.* Ms. Santiago even signed an agreement acknowledging the adequate handling of the problem by the company (Def.'s 56.1 St. ¶ 56; Pl.'s Dep. 70-72, 149-152). Ms. Santiago made no other complaints of sexual harassment thereafter.

In *Durkin*, the Seventh Circuit found that the plaintiff there had failed to make a *prima facie* case, because she could not identify a protected activity which was retaliated against by her employer. *Durkin*, 341 F.3d at 615. In *Durkin*, the plaintiff made only one formal sexual harassment complaint, which was sufficiently addressed by her employer. *Id.* The plaintiff in *Durkin* never reported any other instances of harassment, although she did complain about many other problems in her work environment. *Id.* The Seventh Circuit held that absent further complaints relating directly to Title VII sexual harassment, the plaintiff had not engaged in the necessary "expression" protected by the statute to trigger a claim for retaliation. *Id.*

As the *Durkin* court found that the defendant's prompt and effective response to the plaintiff's complaint precluded a finding of retaliatory behavior, here too, the clearly adequate response by the Orland Park Motor is persuasive evidence that a jury could not reasonably find retaliation with respect to this incident. Because Ms. Santiago failed to report any harassment problems after her December 2000 complaint, Orland Park Motor cannot be said to have retaliated against her for engaging in protected activity, because it had "nothing… to retaliate against." *Id.*[2]

Ms. Santiago points to the relative closeness or time between her December 2000 complaint and her February 2001 termination to create the causal link necessary for a *prima facie* case of

---

[2]We note that the only other complaint about sexual harassment made by Ms. Santiago occurred before she was transferred to the sales position (Pl.'s 56.1 Resp. ¶ 25). She does not allege that this complaint was handled dissatisfactorily; and, her subsequent transfer and promotion to a sales position also clearly demonstrate a dearth of retaliatory behavior on the part of the defendant relating to the plaintiff's harassment claims.

retaliation, relying on *Ajayi*, 336 F.3d at 533. In *Ajayi*, the Seventh Circuit held that inappropriate comments made by the employee's supervisor relating directly to its employment decision, coupled with close temporal proximity between the time the employer learned about the complaint and the employee's termination (there, just a few days), was sufficient to raise an inference of causation. However, Ms. Santiago points to no comments by Orland Park Motor to bolster the argument based on suspicious timing, and, "suspicious timing" – if the passage of nearly two months can be called suspicious timing – is, without more, not enough to show causation. *Stone v. City of Ind. Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

**B.**

Assuming, *arguendo*, that Ms. Santiago could establish a *prima facie* case, she still has to demonstrate that the reasons set forth by Orland Park Motor for her termination were pretextual. *Peele*, 288 F.3d at 327. The standard for pretext requires the plaintiff to show that: the defendant's reasons (1) have no basis in fact; (2) did not actually motivate the defendant; or (3) were insufficient to motivate the defendant's decision. *LaMontagne v. Am. Convenience Products, Inc.*, 750 F.2d 1405, 1414-15 (7th Cir. 1984); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) ("Pretext means a lie, specifically a phony reason for some action").

Here, Orland Park Motor asserts that it terminated Ms. Santiago's employment for legitimate, non-discriminatory reasons: (1) her job performance problems, (2) attendance history, and (3) insubordination. Ms. Santiago relies on four primary contentions to argue that the defendant's reasons for termination were pretextual: (1) the memoranda in her file reporting attendance problems did not show up until after she complained about harassment; (2) although she did fail to meet minimum sales requirements, there were many other employees with equally poor sales records and

13

her record was at least partially due to unequal employment treatment; (3) the defendant is lying about discussing her attendance and absence problems with her, as well as about not giving her permission to work at the automobile show; and (4) defendant's credibility is called into question because of post-deposition changes to its testimony and failure to turn over documents in a timely good faith manner (Pl.'s Mem. at 11-16). These arguments, and the evidence Ms. Santiago offers to support them, fail to create a triable issue of pretext.

*First*, there is evidence to create a basis in fact for Orland Park Motor to have believed that Ms. Santiago was performing inadequately. Unlike *Ajayi*, there is no evidence the defendant prepared post-dated reports about past attendance issues to make it appear as though the employee had long-standing job performance problems. *Ajayi*, 336 F.3d at 534. Rather, all of the reports included in her file after the December 2000 incident are related to absences and tardiness which occurred in the time following her complaint. Additionally, there is no inconsistency on the Orland Park Motor side in the objective facts surrounding Ms. Santiago's job performance. In *Ajayi*, the supervisors could not agree on the number of complaints filed against the plaintiff-employee, and admittedly took no action against her for the complaints until she filed her discrimination charge. *Id.* In this case, the parties agree on both the number of sales credited to the plaintiff and to the number of reported absences, even though they disagree on the circumstances surrounding each number (Pl.'s 56.1 Add'l Facts at ¶¶ 4, 35; Pl.'s Ex. H).

*Second*, the evidence plainly shows Orland Park Motor had ample reason to believe that Ms. Santiago's decision to attend the trade show was made in direct contravention to the express instruction of her manager. This is evidence of insubordination which, by itself, constitutes a legitimate basis for her termination. *See Flores v. Preferred Technical Group*, 182 F.3d 512, 515

14

(7th Cir. 1999) ("Insubordination is a legitimate, nondiscriminatory reason for firing an employee"); *see also Ajayi*, 336 F.3d at 533 (insubordination is a legitimate reason for termination).

*Third*, Ms. Santiago has failed to offer evidence from which a jury would conclude that the proffered reasons did not, in fact, motivate the decision to terminate her. On this score, we consider whether the stated reason was not the real reason, but instead was "deceit used to cover [the defendant's] tracks." *Millbrook*, 280 F.3d at 1175. A court may not judge the merits of an employer's business decisions. Unless the employer's decision deviates so widely from what a reasonable employer would have decided, demonstrating that it must have been based on unlawful criteria, comparative qualifications will not shield the plaintiff from summary judgment. *See Id.* Here, the evidence shows that other employees who had job performance and attendance problems like those attributed to the plaintiff were fired (Pl.'s 56.1 Add'l Facts ¶¶ 6, 8, 9). As such, the defendant's actions in this case do not call into question its credibility in the way the defendant's actions in *Ajayi* did, because there is no evidence it was trying to "create" an excuse for firing her solely based on past incidents which may or may not have happened. In this case, there is no question about whether the plaintiff had performance and attendance problems both before and after she filed her harassment complaint which could have supported the employer's decision to terminate her – in addition to the one incident of attending the auto show contrary to an express instruction not to do so, which preceded Ms. Santiago's termination by just one day.

Ms. Santiago again relies on *Ajayi* to support her contention that she has presented a triable issue on pretext. However, this case is different from *Ajayi* in several important evidentiary ways. In *Ajayi*, the defendant learned of the plaintiff's EEOC charge only days before it suspended the plaintiff, and specifically commented on the charge when telling the plaintiff of the suspension.

15

*Ajayi*, 336 F.3d at 533. There is no similar evidence here. In addition, in *Ajayi* there was evidence that the employer had fabricated the dates of certain reports critical of the plaintiff's attendance record, *id.* at 534, thereby raising a credibility issue not present here. Unlike here, in *Ajayi* the employer was inconsistent in the reasons given for the termination, raising a question about what constituted the real reason. *Id.* at 534-35. There is no evidence of similar conduct by Orland Park Motor.

For the foregoing reasons, we conclude that Ms. Santiago has not presented a triable issue on her retaliation claim. We therefore grant the defendant's motion for summary judgment on Count III.

## V.

In Count II, the plaintiff has asserted a state law claim for relief, alleging common law infliction of emotional distress, under the supplemental jurisdiction statute. 28 U.S.C. § 1367(a). Because the Court has determined that summary judgment must be granted in favor of defendant on all of plaintiff's federal claims, for which the Court has federal subject matter jurisdiction, the "general rule" is that this Court "should relinquish jurisdiction over" the state law claims, because they are now before us without being supplemental to the related federal claims. *See Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998). *See also* 28 U.S.C. § 1367(c)(3).

In *Kennedy*, the Seventh Circuit noted that there are "unusual cases in which the balance of factors to be considered under the [supplemental jurisdiction [statute] . . . will point to a federal decision of the state-law claims on the merits," 28 U.S.C. § 1367(c)(4), but in our view this is not one of those cases. Ms. Santiago's claim in Count II raises a preemption question that has not yet

been decided by the Illinois Supreme Court. *See Sutton v. Overcash*, 623 N.E.2d 820, 833 (Ill. App. 1993) (deciding in that case that the tort of intentional infliction of emotional distress requires "proof of more than is necessary to state a claim for sexual harassment under the Human Rights Act" and thus is not preempted by it). Thus, this Court finds that there are no federal interests in comity, fairness and judicial economy that weigh in favor of retaining jurisdiction of this particular claim. Therefore, the Court will decline to exercise jurisdiction over Count II.

## CONCLUSION

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (doc. # 34) on Counts I and III be GRANTED. With the elimination of all federal claims from the case, Ms. Santiago's state law claim in Count II is DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3) and (d). This case is TERMINATED.

ENTER:

/s/ Sidney I. Schenkier

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: November 18, 2003

17